UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| CRESCENT CITY BREWHOUSE, INC. | CIVIL ACTION |
| VERSUS | NO. 23-7366 |
| INDEPENDENT SPECIALTY INSURANCE COMPANY, INC. | SECTION "B"(5) |

## ORDER AND REASONS

Before the Court is defendant Independent Specialty Insurance Company, Inc.'s motion to compel arbitration and stay proceedings (Rec. Doc. 4). For the following reasons,

**IT IS ORDERED** that defendant Independent Specialty Insurance Company, Inc.'s motion to compel arbitration and stay proceedings (Rec. Doc. 4) is **GRANTED**.

**IT IS FURTHER ORDERED** that this case is **STAYED** pursuant to 9 U.S.C. § 3, and, for statistical purposes only, **ADMINISTRATIVELY CLOSED** without prejudice to parties' rights to reopen the case after the conclusion of the arbitration proceedings.

**IT IS FURTHER ORDERED** that <u>no later than thirty (30) days after the conclusion of the arbitration proceedings</u>, parties shall file either a motion to reopen this case and a motion to opt out of the streamlined settlement program, or a joint motion to voluntary dismiss all claims against defendant. **FAILURE TO TIMELY COMPLY WITH THIS ORDER MAY LEAD TO SANCTIONS, INCLUDING DISMISSAL OF PETITION OR DEFENSES, WITHOUT FURTHER NOTICE**. *See* Fed. R. Civ. P. 41(b).

## I.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This insurance-coverage dispute raises claims by a lessee of commercial property against its insurer. Filed on August 23, 2023 in Civil District Court for the Parish of Orleans, the suit originally involved plaintiff Craig Borges' New Orleans d/b/a Craig Borges New Orleans Fresh

Fish & Seafood Co., LLC and defendant Certain Underwriters at Lloyd's, London. Rec. Doc. 1-2 at 1 (state court petition). Plaintiff's counsel, however, admitted error in their initial filing, maintaining the action but replacing all parties in plaintiff's first amended and/or supplemental petition for damages. Rec. Doc. 1-3 at 1 n.1 ("Undersigned counsel's firm represents Crescent City Brewhouse and Borges, two separate clients, on separate Hurricane Ida related matters. On August 23, 2023 undersigned counsel's law firm believed it had filed separate lawsuits on behalf of Crescent City Brewhouse and Borges . . . . However, when electronically filing Crescent City Brewhouse's suit with this Honorable Court, undersigned counsel's firm inadvertently attached the Borges Petition[.]"). The first amended petition raised actions of breach of contract, detrimental reliance, and bad faith by Crescent City Brewhouse ("CCB") against Independent Specialty Insurance Company, Inc. ("ISIC") and Velocity Risk Underwriters, LLC ("Velocity"). *Id.* at 1–2, 4–5. CCB alleges that its leased property at 527 Decatur Street, New Orleans, LA 70130 was insured by policy VVX-CU-701833-03 issued by defendants and in effect at the time of Hurricane Ida's landfall. *See id.* at 2–3. Fundamentally, CCB contends defendants "have not made reasonable payment to Plaintiff for the damages to the property, the business income losses sustained, and/or the damages to the contents as a result of Hurricane Ida." *Id.* at 3 ¶14. As damages, CCB seeks:

a. Full payment of the damages and losses sustained within the policy limits as stated in the insurance contract at issue;

b. Damages for lost property value, diminution of property value, and lost opportunity for the sale and/or lease of the Property;

c. The maximum penalties allowed under Louisiana Revised States 22:1973 and 22:1892;

d. Attorneys' fees recoverable for the bad faith refusal to pay Plaintiff's claim in full;

e. All additional compensatory damages suffered by Plaintiff as a result of the refusal of Defendants to pay Plaintiff's full claim for damages resulting from this

incident within thirty (30) and/or sixty (60) days of receiving satisfactory proof of loss;

f. Interest from the date of judicial demand and any additional interest to which Plaintiff is entitled under Louisiana Revised Statutes 22:1973 and 22:1892; and

g. All other relief that is equitable under the law and as may be proved at the time of trial.

*Id.* at 6 ¶33.

Defendants timely removed the suit pursuant to 28 U.S.C. §1332. Rec. Doc. 1 at 3. On the day of removal, CCB filed notice of the dismissal of all claims against Velocity, as it "was mistakenly named to this action and does not appear to insure Crescent City Brewhouse, LLC under the policy at issue or for the matters in dispute." Rec. Doc. 3 at 1. Remaining defendant ISIC subsequently moved to compel arbitration and stay proceedings, which is currently before the Court. Rec. Doc. 4. CCB filed no opposition to the motion.

## II.   LAW AND ANALYSIS
### A.  Unopposed Motion Standard

In the Eastern District of Louisiana, a respondent that opposes a motion, including a motion to compel arbitration, "must file and serve a memorandum in opposition to the motion with citations of authorities no later than eight days before the noticed submission date." Local Rule 7.5. Parties are entitled to "one extension for a period of 21 days from the time the pleading would otherwise be due." Local Rule 7.8. If a contradictory motion is unopposed, a district court may not grant it automatically, but may grant it if the motion has merit. *See Braly v. Trail*, 254 F.3d 1082, 2001 WL 564155 at *2 (5th Cir. 2001).

The submission date of ISIC's motion to compel arbitration and stay proceedings was January 31, 2024, setting plaintiff's deadline to oppose as January 24, 2024. CCB did not so oppose, nor did it request a pleading extension. The Court "may properly assume that [plaintiff]

has no opposition" to the motion to dismiss, and may grant ISIC's requests if they have merit. *Smith v. Larpenter*, No. 16-15778, 2017 WL 2773662, at *1 n.1 (E.D. La. May 3, 2017), *report and recommendation adopted*, No. 16-15778, 2017 WL 2780748 (E.D. La. June 26, 2017).

### B.  Motion to Compel Arbitration Standard of Review

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, establishes a "liberal policy favoring arbitration" and a "strong federal policy in favor of enforcing arbitration agreements." *Texaco Exploration & Prod. Co. v. AmClyde Engineered Prod. Co., Inc.,* 243 F.3d 906, 909 (5th Cir. 2001) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). Arbitration is a matter of contract, and as such, the court may only compel a party to arbitrate their claims where that party has expressly agreed to arbitration. *See AT&T Tech., Inc. v. Communications Workers of Am.,* 475 U.S. 643, 648 (1986). The Fifth Circuit provides a two-step test for determining whether a district court should compel arbitration, with the first step assessing "whether the parties agreed to arbitrate the dispute in question," which "involves two considerations: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement." *Webb v. Investacorp, Inc.*, 89 F.3d 252, 257–58 (5th Cir. 1996) (citations omitted). "The second step is to determine whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims." *Id.* (citation and internal quotations omitted). Neither party has asserted an external legal constraint that forecloses arbitration; accordingly, the Court will focus on the two-part first step of the Fifth Circuit's arbitration test.

Considering the policy favoring arbitration, the court generally "resolve[s] doubts concerning the scope of coverage of an arbitration clause in favor of arbitration." *Pers. Sec. & Safety Sys. Inc. v. Motorola Inc.*, 297 F.3d 388, 392 (5th Cir. 2002) (citation and internal quotations

4

omitted). Therefore, "a valid agreement to arbitrate applies unless it can be said with positive assurance that [the] arbitration clause is not susceptible of an interpretation which would cover the dispute at issue. *Id.* (citation and internal quotations omitted) (emphasis in original).

Nonetheless, in certain circumstances state legislation can circumscribe the FAA. The 1945 McCarran–Ferguson Act, 15 U.S.C. §§ 1011–1015, provides that "any state law enacted for the purpose of regulating insurance will trump, or 'reverse preempt,' any contrary federal law that does not relate specifically to insurance." *Courville v. Allied Pros. Ins. Co.*, 2013-0976 (La. App. 1 Cir. 6/5/15); 174 So. 3d 659, 665, *writ denied*, 2015-1309 (La. 10/30/15); 179 So. 3d 615. Specifically, the Act states "[n]o Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance . . . unless such Act specifically relates to the business of insurance." 15 U.S.C. § 1012(b). Accordingly, the United States Fifth Circuit Court of Appeals assigns three conditions for the McCarran–Ferguson Act's application: where "(1) the federal statute does not specifically relate to the business of insurance; (2) the state law was enacted for the purpose of regulating the business of insurance; and (3) the federal statute operates to invalidate, impair, or supercede the state law." *Am. Bankers Ins. Co. of Fla. v. Inman*, 436 F.3d 490, 493 (5th Cir. 2006) (quotations and citations omitted).

Whether state legislation regulates the "business of insurance," in turn, requires further inquiry. Assessed through three factors, courts evaluate the business of insurance by asking "(1) whether the practice in question has the effect of transferring or spreading a policyholder's risk; (2) whether the practice is an integral part of the policy relationship between the insurer and the insured; and (3) whether the practice is limited to entities within the insurance industry." *Id.* (quoting *Union Labor Life Ins. Co. v. Pireno*, 458 U.S. 119, 129 (1982)).

### C.  Application of Louisiana Revised Statute § 22:868

Following the enactment of the McCarran–Ferguson Act, Louisiana adopted Louisiana Revised Statute § 22:868, which state courts have interpreted as serving to "reverse-preempt" the FAA, and "render[] void arbitration provisions in insurance contracts." *See McDonnel Grp., L.L.C. v. Great Lakes Ins. SE, UK Branch*, 923 F.3d 427, 431 (5th Cir. 2019), *as revised* (June 6, 2019) (citations omitted). In pertinent part, the statute provides that "[n]o insurance contract delivered or issued for delivery in this state . . . shall contain any condition, stipulation, or agreement . . . [d]epriving the courts of this state of the jurisdiction or venue of action against the insurer." La. Rev. Stat. § 22:868. Accordingly, Louisiana courts have found that arbitration provisions in insurance contracts are unenforceable. *See Doucet v. Dental Health Plans Mgmt. Corp.*, 412 So. 2d 1383, 1384 (La. 1982); *Macaluso v. Watson*, 171 So. 2d 755, 757 (La. Ct. App. 4 Cir. 1965); *Hobbs v. IGF Ins. Co.*, 2002-26 (La. App. 3 Cir. 10/23/02), 834 So. 2d 1069, 1071, *writ denied sub nom. Hobbs v. IFG Ins. Co.*, 2002-2869 (La. 1/31/03), 836 So. 2d 71; *Courville v. Allied Pros. Ins. Co.*, 2016-1354 (La. App. 1 Cir. 4/12/17), 218 So. 3d 144, 148, *writ denied*, 2017-0783 (La. 10/27/17), 228 So. 3d 1223.

Nonetheless, ISIC argues that Louisiana Revised Statute § 22:868 does not apply to surplus lines insurers and that the FAA, which favors arbitration agreements, instead governs parties' insurance policy. *See* Rec. Doc. 4-2 at 5–8. ISIC reaches this conclusion by contending the McCarran–Ferguson Act does not apply to Louisiana's bar on arbitration at all. *Id.* at 7. Specifically, ISIC avers that the state legislation does not seek to regulate the business of insurance. *Id.* Relying on the United States Fifth Circuit's en banc opinion in *Safety National Casualty Corp. v. Certain Underwriters at Lloyd's, London*, ISIC insists there are "doubts as to whether [§] 22:868

regulated the business of insurance." *Id.* at 7 n.20 (discussing *Safety Nat. Cas. Corp. v. Certain Underwriters at Lloyd's, London*, 587 F.3d 714, 720–721 (5th Cir. 2009)).

In *Safety National Casualty Corp.*, the Fifth Circuit held the McCarran–Ferguson Act did not authorize Louisiana Revised Statute § 22:868 to preempt the Convention on the Recognition and Enforcement of Foreign Arbitral Awards or its implementing legislation. *Safety Nat. Cas. Corp.*, 587 F.3d at 717. As a treaty, the Convention went beyond the scope of the McCarran–Ferguson Act and, therefore, could not be reverse-preempted by state legislation. *Id.* at 723–24 ("We do not consider it reasonable to construe the term 'Act of Congress' in the McCarran–Ferguson Act as an indication of congressional intent to permit state law to preempt implemented, non-self-executing treaty provisions but not to preempt self-executing treaty provisions."). However, in its presentation of the issue before it, the *Safety National Casualty Corp.* court speculated on the preemption capacity of Louisiana Revised Statute § 22:868 itself: "[W]e will assume, without deciding, that the Louisiana statute regulates the business of insurance, although the matter is not entirely free from doubt." *Id.* at 720 (citations omitted). In its notes, the Fifth Circuit specified that its doubts arose from § 22:868's regulation of the business of insurance, namely, whether the state arbitration bar has the effect of spreading or transferring policyholder risk. *Id.* at 720 n.21 ("An argument could be made that, at least in theory, resolving claims in an arbitration rather than in a court or potentially before a jury does not substantially affect the risk pooling arrangement between the insurer and the insured.").

Even as it cast doubt, however, the Fifth Circuit also left its own precedent on the issue intact:

> We note that this court held in *American Bankers Insurance Co. of Florida v. Inman,* 436 F.3d 490 (5th Cir. 2006), that the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ("FAA"), was reverse-preempted by the McCarran–Ferguson Act in the context of a dispute between an injured insured and his insurer regarding

> underinsured-motorist coverage governed by Mississippi law. We have no occasion
> to reconsider that holding today. The issue has not been presented in this appeal.

*Id.* In *American Bankers Insurance Co. of Florida*, the Fifth Circuit considered a Mississippi statute found in its title on insurance: "No such endorsement or provisions shall contain a provision requiring arbitration of any claim arising under any such endorsement or provisions." Miss. Code Ann. § 83-11-109 (discussed in *Am. Bankers Ins. Co. of Fla. v. Inman*, 436 F.3d 490, 492 (5th Cir. 2006)). In affirming the district court's determination that the state legislation reverse-preempted the FAA, the Fifth Circuit walked through the "business of insurance" factors implicated by an arbitration bar. *Am. Bankers Ins. Co. of Fla.*, 436 F.3d at 493–94 (5th Cir. 2006). Considering the spreading or transfer of policyholder risk through a bar of arbitration in certain contracts, the Fifth Circuit found the legislation was regulating the business of insurance: "this is a determination by the Mississippi legislature to control the risks and harms caused by uninsured and underinsured motorists." *Id.* at 494. The court further determined that the arbitration bar formed an integral part of the relationship between insured and insurer "because it controls how disputes regarding uninsured/underinsured motorist coverage will be resolved." *Id.* (citations omitted).

The Fifth Circuit has had occasion to confront Louisiana Revised Statute § 22:868 subsequent to its *Safety National Casualty Corp.* opinion. In *McDonnel Group, L.L.C. v. Great Lakes Insurance SE, UK Branch*, the appellate court considered a further derivation of a Convention-related issue: does an insurance policy's conformity clause effectuate an arbitration bar that would otherwise be preempted by the Convention? *McDonnel Grp., L.L.C. v. Great Lakes Ins. SE, UK Branch*, 923 F.3d 427, 432–33 (5th Cir. 2019), *as revised* (June 6, 2019). In holding the conformity clause does not revive a state statute's reverse-preemption power, the Fifth Circuit still used as its interpretive key state court holdings: "Louisiana's state courts have interpreted § 22:868 as rendering void arbitration provisions in insurance contracts." *Id.* at 431 (citing *Doucet*

*v. Dental Health Plans Mgmt. Corp.*, 412 So. 2d 1383, 1384 (La. 1982) ("Classification of the contract at issue as an insurance contract renders the arbitration provisions of that contract unenforceable under [§ 22:868].")).

As it regulates the business of insurance, Louisiana Revised Statute § 22:868 falls under the McCarran–Ferguson Act exemption. The legislation was enacted in response to the McCarran–Ferguson Act. *See Creekstone Juban I, L.L.C. v. XL Ins. Am., Inc.*, 2018-0748 (La. 5/8/19), 282 So. 3d 1042, 1052 (Weimer, J., concurring) ("In 1948, shortly after passage of the [McCarran–Ferguson Act], the Louisiana Legislature took up Congress's invitation to reverse-preempt the FAA, passing the predecessor to La. R.S. 22:868 as part of the Insurance Code . . . . [C]ases decided after the enactment . . . have confirmed its purpose as an anti-arbitration statute."). Further, § 22:868 compares favorably to Mississippi Code § 83-11-109, the Mississippi arbitration bar which the Fifth Circuit held all factors favored the legislation's regulation of the business of insurance. *Am. Bankers Ins. Co. of Fla.*, 436 F.3d at 492. The Fifth Circuit made this determination despite a legislative history more attenuated from the McCarran–Ferguson Act, as Mississippi Code § 83-11-109 was enacted not in the Act's immediate aftermath, but in 1968. Finally, Louisiana state courts are unanimous in their understanding of § 22:868's purpose to regulate the business of insurance and, thus, in its reverse-preemptive application. *See, e.g., Doucet*, 412 So. 2d at 1384. Unless the Fifth Circuit reconsiders the issue and overturns the consistent legislative understanding of § 22:868, the footnoted "doubt" in *Safety National Casualty Corp.* does not control. *See Safety Nat. Cas. Corp.*, 587 F.3d at 720 n.21. Accordingly, ISIC's argument that the FAA—and not § 22:868—governs the dispute must be rejected.

   **D.  Arbitration through Louisiana Revised Statute § 22:868(D) for Surplus Lines Policy**

As Louisiana Revised Statute § 22:868 controls this insurance dispute, ISIC's alternative argument applies. Through the operation of § 22:868(D), an arbitration agreement is not precluded in a surplus lines policy. Whereas § 22:868(A)(1) bars insurance contracts from "[d]epriving the courts of this state of the jurisdiction or venue of action against the insurer," § 22:868(D) creates an exception to the rule: "The provisions of Subsection A of this Section shall not prohibit a forum or venue selection clause in a policy form that is not subject to approval by the Department of Insurance." La. Rev. Stat. § 22:868. CCB's insurance policy issued by ISIC "is delivered as a surplus line coverage under the Insurance Code of the State of Louisiana." Rec. Doc. 1-4 at 2. Surplus lines coverage is not subject to approval by the Department of Insurance. *See* La. Rev. Stat. § 22:446(A) ("The commissioner shall not require surplus lines insurers to file or seek approval of their forms and rates for property and casualty insurance except as provided in R.S. 22:1456(B)(2) relative to public carrier vehicles."). Accordingly, the forum-or-venue-selection exception of § 22:868(D) applies.

In *Ramsey v. Independent Specialty Insurance Co.*, we considered whether an arbitration clause is a type of venue or forum selection clause—and thereby permitted in surplus lines policies pursuant to § 22:868(D)—or a mechanism that strips jurisdiction—and thereby barred by § 22:868(A) no matter the type of insurance contract. *Ramsey v. Indep. Specialty Ins. Co.*, No. 23-0632, 2023 WL 5034646, at *4–5 (E.D. La. Aug. 8, 2023), *reconsideration denied*, No. 23-632, 2023 WL 6928047 (E.D. La. Oct. 19, 2023), and *motion to certify appeal denied*, No. 23-632, 2023 WL 8559316 (E.D. La. Dec. 11, 2023). At that time, we acknowledged "[t]he question of whether La. Rev. Stat. § 22:868 applies to surplus line insurers has not been ruled on by the Louisiana Supreme Court," requiring us to make an *Erie* guess as to how the state-law issue would be decided. *Id.* at *3 (citing *Howe ex rel. Howe v. Scottsdale Ins. Co.*, 204 F.3d 624, 627 (5th Cir.

2000) (further citations omitted)). The question still has not been decided by the Louisiana Supreme Court. *See Southland Circle, LLC v. Indep. Specialty Ins. Co.*, 2023-00990 (La. 10/3/23), 370 So. 3d 1047 (denying certification of question).

In *Ramsey*, this Court found the weight of recent United States and Louisiana Supreme Court decisions to treat arbitration as depriving venue but not jurisdiction, concluding that we "must treat the arbitration clause as a venue or forum selection clause." *Id.* at *4 (citing, *inter alia*, *Donelon v. Shilling*, 2019-00514 (La. 4/27/20), 340 So. 3d 786, 790 n.6 ("An arbitration clause has been characterized by this court as a type of venue selection clause."); *Viking River Cruises, Inc. v. Moriana*, 142 S. Ct. 1906, 1919 (2022) ("[A]n arbitration agreement is a specialized kind of forum-selection clause that posits not only the situs of suit but also the procedure to be used in resolving the dispute.") (internal quotations omitted)). In other places, the Louisiana Supreme Court has similarly treated an arbitration clause as forum-selective, not jurisdictional. *See Hodges v. Reasonover*, 2012-0043 (La. 7/2/12), 103 So. 3d 1069, 1076 (citing approvingly *Ginter ex rel. Ballard v. Belcher, Prendergast & Laporte,* 536 F.3d 439 (5th Cir. 2008)) ("An arbitration clause does not inherently limit or alter either party's substantive rights; it simply provides for an alternative venue for the resolution of disputes.").

This treatment conforms with the legislative history of § 22:868(D). As Judge Lemmon detailed in *Bourgeois v. Independent Specialty Insurance Co.*, the amendment history of § 22:868 "reflects an intent to preserve flexibility for surplus lines insurers." *Bourgeois v. Indep. Specialty Ins. Co.*, No. 22-1256, 2023 WL 6644171, at *4 (E.D. La. Oct. 12, 2023). In an effort "to prevent rural or far-flung constituents, in cases involving suits brought in Louisiana courts on a Louisiana insurance policy, from being forced to litigate in relatively distant urban centers (e.g., New Orleans and Baton Rouge), due to its costliness," a venue bar was proposed for the text of § 22:868(A)(2).

11

*Id.* ("Depriving the courts of this state of the jurisdiction <u>or venue</u> of action against the insurer."). However, until § 22:868(D) was added, the proposed bill did not pass. *Id.* ("Four days later, on May 19, 2020, Senator Peacock introduced an amendment to add Section D in its present form, exempting surplus lines insurers from the prohibition on forum selection clauses.").

In addition to Judge Lemmon's opinion in *Bourgeois*, our conclusion that arbitration clauses are a subset of forum-or-venue-selection clauses—and thus, permitted in surplus lines contracts pursuant to § 22:868(D)—has been echoed by various sections of the Eastern District of Louisiana Court. *See 711 Tchoupitoulas Condo. Ass'n, Inc. v. Indep. Specialty Ins. Co.*, No. 22-276, 2023 WL 8716580, at *4 (E.D. La. Dec. 18, 2023) (Papillion, J.)*; Casa Angelo, Inc. v. Indep. Specialty Ins. Co.*, No. 23-5842, 2023 WL 8600462, at *3 (E.D. La. Dec. 12, 2023) (Fallon, J.); *Cornerstone Ass'n v. Indep. Specialty Ins. Co.*, No. 23-2478, 2023 WL 8257987, at *4 (E.D. La. Nov. 29, 2023) (Morgan, J.); *Southland Circle, LLC v. Indep. Specialty Ins. Co.*, No. 23-855, 2023 WL 7688570, at *4 (E.D. La. Nov. 15, 2023) (Vitter, J.); *Beachcorner Properties, LLC v. Indep. Specialty Ins. Co.*, No. 23-1287, 2023 WL 7280516, at *7 (E.D. La. Nov. 3, 2023) (Ashe, J.); *Queens Beauty Supply, LLC v. Indep. Specialty Ins. Co.*, No. 22-3444, 2023 WL 7154117, at *1 (E.D. La. Oct. 31, 2023), *reconsideration denied*, No. CV 22-3444, 2023 WL 8810738 (E.D. La. Dec. 20, 2023) (Guidry, J.). Based on our review of the statutory language and pertinent caselaw, we hold that the arbitration clause in the surplus lines policy issued by ISIC to CCB falls within the forum-or-venue-selection exception of Louisiana Revised Statute § 22:868(D). As such, there is a valid agreement to arbitrate between the parties, the first part of the Fifth Circuit's test on whether there was agreement to arbitrate.

### E.  Arbitration Within the Scope of Parties' Agreement

Even with a valid agreement, however, the matter still must fall within the scope of the arbitration agreement. *See Webb v. Investacorp, Inc.*, 89 F.3d 252, 258 (5th Cir. 1996) (citations omitted).  "[A]mbiguities as to the scope of the arbitration clause itself must be resolved in favor of arbitration." *Id.* at 258 (citation omitted). Here, the arbitration agreement states that "[a]ll matters in dispute between you and us (referred to in this policy as "the parties") in relation to this insurance, including this policy's formation and validity, and whether arising during or after the period of this insurance, shall be referred to an Arbitration Tribunal . . . ." Rec. Doc. 1-4 at 35. In its first amended and/or supplemental petition, CCB is seeking:

> a. Full payment of the damages and losses sustained within the policy limits as stated in the insurance contract at issue;
>
> b. Damages for lost property value, diminution of property value, and lost opportunity for the sale and/or lease of the Property;
>
> c. The maximum penalties allowed under Louisiana Revised States 22:1973 and 22:1892;
>
> d. Attorneys' fees recoverable for the bad faith refusal to pay Plaintiff's claim in full;
>
> e. All additional compensatory damages suffered by Plaintiff as a result of the refusal of Defendants to pay Plaintiff's full claim for damages resulting from this incident within thirty (30) and/or sixty (60) days of receiving satisfactory proof of loss;
>
> f. Interest from the date of judicial demand and any additional interest to which Plaintiff is entitled under Louisiana Revised Statutes 22:1973 and 22:1892; and
>
> g. All other relief that is equitable under the law and as may be proved at the time of trial.

Rec. Doc. 1-3 at 6 ¶33. Considering all ambiguities in favor of arbitration, it is clear that the dispute falls within the scope of the broad arbitration agreement. Therefore, the second prong is satisfied. As we previously noted that no legal constraints external to the parties' agreement forecloses arbitration, the Fifth Circuit test is satisfied. Pursuant to a valid and enforceable arbitration clause,

CCB's allegations must be presented for arbitration. In sum, ISIC's unopposed motion to compel arbitration and stay proceedings has merit.

New Orleans, Louisiana, this 15th day of February, 2024

_____
SENIOR UNITED STATES DISTRICT JUDGE